**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ANEISHA PITTMAN and SUSAN UKPERE,** | Civil Case No. |
| **Plaintiffs,** | **CLASS ACTION COMPLAINT** |
| **v.** | |
| | **JURY TRIAL DEMANDED** |
| **CHICK-FIL-A, INC.,** | |
| **Defendant.** | |

Plaintiffs ANEISHA PITTMAN and SUSAN UKPERE, on behalf of themselves and all others similarly situated, complain and allege upon information and belief based, among other things, upon the investigation made by Plaintiffs and through their attorneys as follows:

## NATURE OF ACTION

1.      This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant Chick-fil-A, Inc. ("Defendant" or "Chick-fil-A"), arising from its deceptive and untruthful promises to provide a flat, low-price delivery fee on food deliveries ordered through is app and website.

2.      Since the beginning of the COVID-19 pandemic, Chick-fil-A has moved aggressively into the food delivery business, exploiting an opportunity presented by Americans' reduced willingness to leave their homes.  To appeal to consumers in a crowded food delivery marketplace, Chick-fil-A has promised its customers low-price delivery in its mobile application and on its website, usually in the amount of $2.99 or $3.99.

3.      These representations, however, are false, because that is not the true cost of having food delivered by Chick-fil-A. In fact, Chick-fil-A imposes hidden delivery charges on its customers in addition to the low "Delivery Fee" represented in its app and on its website.

4.      On delivery orders only, Chick-fil-A secretly marks up food prices for delivery orders by a hefty 25-30%. In other words, the identical order of a 30-count chicken nuggets costs approximately $5-6 more when ordered for delivery than when ordered via the same mobile app for pickup, or when ordered in-store.

5.      This hidden delivery upcharge makes Chick-fil-A's promise of low-cost delivery patently false. The true delivery costs are obscured, as described above, and far exceed its express representation that its "Delivery Fee" is a flat fee of only $2.99 or $3.99.

6.      By falsely marketing a quantified, low-cost delivery charge, Chick-fil-A deceives consumers into making online food purchases they otherwise would not make.

7.      Chick-fil-A misrepresents the nature of the delivery charges assessed on the Chick-fil-A mobile application and the website, by issuing in-app and online marketing materials that fail to correct reasonable understandings of its low-cost delivery promises, and that misrepresent the actual costs of the delivery service.

8.      Specifically, Chick-fil-A omits and conceals material facts about the Chick-fil-A delivery service, never once informing consumers in any disclosure, at any time, that the use of the delivery service causes a substantial increase in food prices.

9.      Hundreds of thousands of Chick-fil-A customers like Plaintiffs have been assessed hidden delivery charges they did not bargain for.

10.      Consumers like Plaintiffs reasonably understand Chick-fil-A's express "Delivery Fee" representation to disclose the total additional cost they will pay as a result of having their food delivered, as opposed to ordering online and picking up food in person, or ordering and picking up food in person.

11.      By unfairly obscuring its true delivery costs, Chick-fil-A deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true delivery charges. For example, other restaurants such as Del Taco and El Pollo Loco both offer delivery services through their app and website. But unlike Chick-fil-A, Del Taco and El Pollo Loco fairly and prominently represent their true delivery charges.

12.     Plaintiffs seek damages and, among other remedies, injunctive relief that fairly allows consumers to decide whether they will pay Chick-fil-A's delivery mark-ups.

## PARTIES

13.     Plaintiff Aneisha Pittman is a citizen of the State of New Jersey who resides in Newark, New Jersey.

14.     Plaintiff Susan Ukpere is a citizen of the State of New York who resides in Bronx, New York.

15.     Defendant, Chick-fil-A Inc. is incorporated in Georgia and maintains its principal business offices in Atlanta, Georgia.

## JURISDICTION AND VENUE

16.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed class is comprised of at least 100 members; (2) Plaintiffs are citizens of New Jersey and New York, making at least one member of the proposed class a citizen of a different state than Defendant; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Chick-fil-A is subject to personal jurisdiction here and regularly conducts business in this district. Also, a substantial portion of the events or omissions giving rise to the claims asserted herein occurred in this district.

## COMMON FACTUAL ALLEGATIONS

**A.     Food Delivery Services Increase in Popularity, and then Explode in Popularity During the Pandemic.**

18.     In 2018, the online food delivery industry was an astounding $82 billion in gross

revenue and projected to exceed $200 billion by 2025.[1]

19.     US Foods reports that the average American consumer has two food delivery apps installed on their mobile phone and uses those apps three times per month.[2]

20.     The online food delivery industry predominately influences the country's most financially vulnerable populations. A nationwide research study conducted by Zion & Zion reveals that the largest user markets for online delivery food services are the young and the poor.[3] During a 90-day timeframe, 63% of consumers between the ages of 18 and 29 used a multi-restaurant delivery website or app service, followed by 51% of consumers between the ages of 30 to 44.[4] The study also demonstrated that the "less income a consumer earns, the more likely the consumer is to take advantage of restaurant delivery services," as those earning less than $10,000 per year ordered online delivery the most (51.6%).[5]

21.     Put plainly, the allure for online food delivery services has historically been based upon pure convenience. A 2019 Gallup study of third-party delivery services companies like GrubHub, DoorDash, and Uber Eats reported 72% of customers order online food delivery because they don't want to leave their house; 50% so that they can continue with their ongoing activities; and 41% to avoid bad weather.[6]

22.     According to data compiled by Yelp, food delivery orders have *doubled* since the

---

[1] *See* Frost & Sullivan, *$9.6 Billion in Investments Spurring Aggressive Expansion of Food Delivery Companies,* October 25, 2019, accessible at https://ww2.frost.com/news/press-releases/9-6-billion-in-investments-spurring-aggressive-expansion-of-food-delivery-companies/, last accessed January 19, 2021.

[2] *See* US Foods, *New Study Shows What Consumers Crave in a Food Delivery Service,* 2019, accessible at https://www.usfoods.com/our-services/business-trends/2019-food-delivery-statistics.html, last accessed January 19, 2021.

[3] *See* Aric Zion and Thomas Hollman, Zion & Zion Research Study, *Usage and Demographics of Food Delivery Apps,* accessible at https://www.zionandzion.com/research/food-delivery-apps-usage-and-demographics-winners-losers-and-laggards/, last accessed January 19, 2021.

[4] *Id.*

[5] *Id.*

[6] *See* Sean Kashanchi, Gallup, *Third-Party Delivery Will Grow; Is Your Restaurant Ready?,* May 6, 2019, accessible at https://www.gallup.com/workplace/248069/third-party-delivery-grow-restaurant-ready.aspx, last accessed January 19, 2021.

4

COVID-19 outbreak began.[7]

23.    The arrival of the unprecedented COVID-19 pandemic escalated the value of online food delivery services from one of pure convenience to that of a comforting necessity for many consumers who are sick, in a high-risk population group for COVID-19, or simply do not feel safe to leave their homes and venture out into the public to purchase food during quarantine.

24.    In its 2019 Economic Report conducted by research firm Technomic, DoorDash reported that 86% of customers agreed that DoorDash played an important role in helping them access food during the pandemic and 77% of consumers increased their use of third-party delivery services during this time.[8] Indeed, amidst the uncertainty of the novel virus, 68% of consumers now view ordering food online for delivery as the safer option.[9]

25.    The era of COVID-19 undoubtedly caused a significant revenue boom for third party delivery services. SEC filings indicate that the top four U.S. food-delivery apps (DoorDash, Uber Eats, GrubHub, and Postmates) collectively experienced a *$3 billion increase* in revenue in just two quarters, April through September, following the enactment of shelter-in-place restrictions throughout the nation.[10]

26.    The ramp up in utilization of food delivery services also had a massive positive impact on restaurant owners who were quickly on the brink of facing permanent closures during lockdown: 67% of restaurant operators said DoorDash was crucial to their business during

---

[7] *See* Tal Axelrod, The Hill, *Yelp: Delivery and take-out twice as popular as usual amid coronavirus,* March 20, 2020, available at https://thehill.com/policy/technology/488749-yelp-delivery-and-take-out-twice-as-popular-as-usual-amid-coronavirus, last accessed January 19, 2021.

[8] *See* Technomic and DoorDash, 2019 Economic Impact Report, *The Impact of DoorDash on Economic Activity and Restaurant Resilience,* available at https://doordashimpact.com/media/2019-Economic-Impact-Report.pdf, last accessed January 19, 2021.

[9] *Id.*

[10] *See* Levi Sumagaysay, Market Watch, *The pandemic has more than doubled food-delivery apps' business. Now what?,* last updated November 27, 2020, available at https://www.marketwatch.com/story/the-pandemic-has-more-than-doubled-americans-use-of-food-delivery-apps-but-that-doesnt-mean-the-companies-are-making-money-11606340169, last accessed January 19, 2021.

COVID-19 and 65% say they were actually able to *increase* profits during this time because of DoorDash.

27.     In the wake of the food delivery surge, Consumer Reports highlighted the need for fee transparency for consumers who use these apps and services.[11] A research team investigated food delivery companies and the report measured their compliance with new rules regarding fees enacted in seven US cities aimed at protecting consumers and businesses during the pandemic. It found that these companies continued to not comply with the new ordinances and continued to "employ design practices that obfuscate fees." They concluded that "[c]onsumers deserve to have informed choices to understand what they are being charged for *and* how their dollars spent impacts the restaurants they support and patronize in their communities."

**B.     Chick-fil-A's App and Website Fails to Bind Users to Any Terms of Service.**

28.     When a consumer downloads the Chick-fil-A app, or uses the Chick-fil-A website, he may create an account in order to place an order for delivery or pickup.

29.     In order to do so, a user enters in a name and contact information.

30.     While the account creation screen contains a small hyperlink to view Chick-fil-A's Terms of Service and Privacy Notice, users are not required to affirmatively consent to such terms, such as by clicking or checking a box.

**C.     Chick-fil-A Prominently and Plainly Represents a Flat "Delivery Fee" on its App and Website.**

31.     Beginning in early 2020, Chick-fil-A began prominently featuring low-cost delivery promises on its mobile application and on its website.

32.     Such representations often are made on the home screen of the app or website, and were always made on the check-out screen of the app and website, prior to the finalization of an order.  On that screen, Chick-fil-A promised a flat "Delivery Fee," usually in the amount of $2.99

---

[11] *See* Consumer Reports, *Collecting Receipts: Food Delivery Apps & Fee Transparency*, September 29, 2020, accessible at https://digital-lab-wp.consumerreports.org/wp-content/uploads/2020/09/Food-delivery_-Report.pdf, last accessed January 19, 2021.

or $3.99.

33.     Specifically, for supposed "$3.99 Delivery Fee" orders, the order finalization screen states:

Subtotal: [representing the cost of the food selected]

Tax: [representing sales tax]

Delivery Fee: $3.99

Tip:

Total:  [adding up the above]

34.     In short, there was no way for Plaintiffs or other users of the Chick-fil-A mobile application or website to *avoid* seeing Chick-fil-A's promises of a flat fee, $3.99 delivery charge.

**D.     Chick-fil-A Omits and Conceals Material Facts About the Costs of the Chick-fil-A Delivery Service.**

35.     But those disclosures were false and misleading, and the delivery charge was not, in fact, a flat fee of $2.99 or $3.99.

36.     Chick-fil-A furtively marked up the cost of food reflected in the "Subtotal"—adding a hefty 25-30% to the cost of the food items ordered for delivery. Chick-fil-A did not and does not make similar markups for identical food items ordered via the same app or website, where such items are ordered for pickup instead of delivery.

37.     Chick-fil-A omitted this material fact from its app and website disclosures, never informing users of this secret markup.

38.     This secret markup—which Chick-fil-A *only* applies to delivery orders—is a hidden delivery fee. This alone renders false Chick-fil-A's promise of a flat, low-cost delivery fee of $2.99 or $3.99, which is made repeatedly in the app and the website, and then again in the "Delivery Fee" line item on the order screen.

39.     In short, the "Delivery Fee" is not actually $2.99 or $3.99. The actual "Delivery Fee"—the extra charge for having food delivered as opposed to picking it up—is the listed

"Delivery Fee" *plus* the hidden food markup applied exclusively to delivery orders.

40.     Chick-fil-A does not inform consumers the true costs of its delivery service and it misrepresents its "Delivery Fee" as $2.99 or $3.99, when in fact that cost is actually much higher.

**E.     Other Restaurant Industry Actors Disclose Delivery Fees Fairly and Expressly.**

41.     By unfairly obscuring its true delivery costs, Chick-fil-A deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true delivery charges. For example, other restaurants like Del Taco and El Pollo Loco both offer delivery services through their app and website.  But unlike Chick-fil-A, Del Taco and El Pollo Loco fairly and prominently represent their true delivery charges.

42.     For example, Del Taco does not mark-up food charges for delivery orders through its app. Instead, for delivery orders its ordering screen presents the following:

Subtotal:

Tax:

Delivery Charge:

Tip:

43.     All line-item amounts are **<u>identical</u>** for delivery and pick-up orders, except for the plainly and fairly disclosed delivery charge—allowing consumers to understand the true cost of the delivery service.

44.     Similarly, El Pollo Loco does not mark-up food charges for delivery orders through its app. Instead, for delivery orders its ordering screen presents the following:

Subtotal:

Delivery Charge:

Tax:

45.     All line-item amounts are **<u>identical</u>** for delivery and pick-up orders, except for the plainly and fairly disclosed delivery charge—allowing consumers to understand the true cost of the delivery service.

46.     Lastly, although Instacart, the grocery delivery service, does mark-up item charges

for delivery orders made through its app, it provides an express warning to consumers that the item prices listed on its app are "higher than in-store prices." Instacart's clear disclaimer is made visible to consumers before they place their orders and allows consumers to understand that they are paying a higher price for utilizing the delivery service, as opposed to what they would pay had they purchased the same items in-store.

**F.      Plaintiffs' Experiences**

47.      Plaintiff Aneisha Pittman made an online purchase of food from Chick-fil-A on November 13, 2020, in the total amount of $22.88.

48.      Prior to placing her order, the Chick-fil-A website stated that the Delivery Fee was $3.99.

49.      However, the cost of food ordered by Plaintiff Pittman bore a hidden delivery fee markup. To illustrate, Chick-fil-A charged Plaintiff Pittman $12.85 for an 8-count of Chick-Fil-A nuggets meal.

50.      Upon information and belief, the same item would have cost Plaintiff Pittman 25-30% less than what she had paid had she picked it up from the Chick-fil-A location instead.

51.      Plaintiff Pittman would not have made the purchase had she known the Chick-fil-A delivery fee was not in fact $3.99.

52.      If she had known the true delivery fee, she would have chosen another method for receiving food from Chick-fil-A or ordered food from another provider.

53.      Plaintiff Susan Ukpere made an online purchase of food from Chick-fil-A on August 29, 2020, in the total amount of $26.30.

54.      Prior to placing her order, the Chick-fil-A website stated that the Delivery Fee was $2.99.

55.      However, the cost of food ordered by Plaintiff Ukpere bore a hidden delivery fee markup. To illustrate, Chick-fil-A charged Plaintiff Ukpere $11.05 for a spicy deluxe sandwich meal.

56.      Upon information and belief, the same item would have cost Plaintiff Ukpere 25-

30% less than what she had paid had she picked it up from the Chick-fil-A location instead.

57.     Plaintiff Ukpere would not have made the purchase had she known the Chick-fil-A delivery fee was not in fact $2.99.

58.     If she had known the true delivery fee, she would have chosen another method for receiving food from Chick-fil-A or ordered from another provider.

59.     On November 4, 2020 and February 17, 2021, Plaintiff Ukpere placed similar orders of food for delivery from Chick-fil-A, and in each instance, Chick-fil-A represented the Delivery Fee as $2.99. However, in each instance, the cost of food ordered by Plaintiff Ukpere bore a hidden delivery fee markup of 25-30% more than what she would have paid for the identical items had she picked them up from the Chick-fil-A location instead. Plaintiff Ukpere would not have made these purchases had she known the Chick-fil-A delivery fee was not in fact $2.99.

## CLASS ALLEGATIONS

60.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action on behalf of themselves and Classes of similarly situated persons defined as follows:

**New York Class:**
All persons in New York who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered food delivery through the Chick-fil-A mobile app or website, and were assessed higher delivery charges than represented.

**New Jersey Class:**
All persons in New Jersey who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered food delivery through the Chick-fil-A mobile app or website, and were assessed higher delivery charges than represented.

**Nationwide Class:**
All persons who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered food delivery through the Chick-fil-A mobile app or website, and were assessed higher delivery charges than represented.

61.     Excluded from the Classes are Defendant, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and

members of such persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

62. **Numerosity**:  At this time, Plaintiffs do not know the exact size of the Classes; however, due to the nature of the trade and commerce involved, Plaintiffs believe that the Class members are well into the thousands, and thus are so numerous that joinder of all members is impractical.  The number and identities of Class members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendant.

63. **Commonality**:  There are questions of law or fact common to the Classes, which include, but are not limited to the following:

  a. Whether during the class period, Defendant deceptively represented Delivery Fees on food deliveries ordered through the Chick-fil-A website and mobile app;

  b. Whether Defendant's alleged misconduct misled or had the tendency to mislead consumers;

  c. Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

  d. Whether Defendant's alleged conduct constitutes violations of the laws asserted;

  e. Whether Plaintiffs and members of the Classes were harmed by Defendant's misrepresentations;

  f. Whether Plaintiffs and the Classes have been damaged, and if so, the proper measure of damages; and

g.      Whether an injunction is necessary to prevent Defendant from continuing to deceptively represent low-price, flat delivery fees on food deliveries ordered through the Chick-fil-A website and mobile app.

64.     **Typicality**: Like Plaintiffs, many other consumers ordered food for delivery from Chick-fil-A's website or mobile app, believing delivery to be the flat fee represented based on Defendant's representations. Plaintiffs' claims are typical of the claims of the Classes because Plaintiffs and each Class member was injured by Defendant's false representations about the true nature of the delivery fee. Plaintiffs and the Classes have suffered the same or similar injury as a result of Defendant's false, deceptive and misleading representations. Plaintiffs' claims and the claims of members of the Classes emanate from the same legal theory, Plaintiffs' claims are typical of the claims of the Classes, and, therefore, class treatment is appropriate.

65.     **Adequacy of Representation**: Plaintiffs are committed to pursuing this action and have retained counsel competent and experienced in prosecuting and resolving consumer class actions. Plaintiffs will fairly and adequately represent the interests of the Classes and do not have any interests adverse to those of the Classes.

66.     **The Proposed Classes Satisfy the Prerequisites for Injunctive Relief**. Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive and equitable relief with respect to the Classes as a whole. Plaintiffs remain interested in ordering food for delivery through Chick-fil-A's website and mobile app; there is no way for them to know when or if Defendant will cease deceptively misrepresenting the cost of delivery.

67.     Specifically, Defendant should be ordered to cease from representing their delivery service as a low-price, flat delivery fee and to disclose the true nature of their delivery fee.

68.     Defendant's ongoing and systematic practices make declaratory relief with respect to the Classes appropriate.

69.     **The Proposed Classes Satisfy the Prerequisites for Damages**. The common questions of law and fact enumerated above predominate over questions affecting only individual

members of the Classes, and a class action is the superior method for fair and efficient adjudication of the controversy.  The likelihood that individual members of the Classes will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual Class member.

**FIRST CLAIM FOR RELIEF**
**Deceptive Acts Or Practices – N.Y. Gen. Bus. Law § 349**
**(Asserted on Behalf of the New York Class)**

70.     Plaintiffs repeat and re-allege the above allegations as if fully set forth herein.

71.     This cause of action is brought under New York's General Business Law § 349, *et seq.*

72.     N.Y. Gen. Bus. Law § 349(a) provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

73.     Chick-fil-A committed deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349 by affirmatively and knowingly misrepresenting on its website and mobile app that it provides a flat, low-cost delivery fee of $2.99 or $3.99 for food orders, when, in reality, it hides delivery charges through hidden food markups applied exclusively to delivery orders.

74.     Chick-fil-A's actions regarding its food delivery service, as described herein, are deceptive acts or practices in the conduct of business trade or commerce of food and in the furnishing of food delivery services.

75.     The deceptive acts or practices and the furnishing of food delivery services took place in this State because Chick-fil-A operates in this State and because the food delivery transaction took place in this State when Chick-fil-A accepted Plaintiff's food delivery order placed on the Chick-fil-A website or mobile app in this State. In short, the underlying nature of the deceptive transactions occurred in New York.

13

76.     N.Y. Gen. Bus. Law § 349(h) provides that "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions."

77.     Plaintiff and the Class have been injured by Defendant's violations of N.Y. Gen. Bus. Law § 349.

78.     Defendant's misleading and deceptive conduct occurred, and continues to occur, in the course of Chick-fil-A's business.

79.     As an actual and proximate result of Defendant's misconduct, Plaintiff and the Class were injured and suffered damages.

80.     Defendant is liable to Plaintiff and the Class for damages in amounts to be proven at trial.

## SECOND CLAIM FOR RELIEF
### Violation of New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.*
### (Asserted on Behalf of the New Jersey Class)

81.     Plaintiffs repeat and re-allege the above allegations as if fully set forth herein.

82.     This cause of action is brought under New Jersey's Consumer Fraud Act, § 56:8-1, *et seq.*, (the "NJCFA").

83.     The NJCFA protects consumers from "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise…" N.J. Stat. Ann. § 56:8-2.

84.     Chick-fil-A's food items constitute "merchandise" within the definition of the NJCFA. § 56:8-1(c).

85.     Chick-fil-A violated the NJCFA by knowingly misrepresenting on its mobile app and website that it provides a flat, low-cost delivery fee of $2.99 or $3.99 for food orders, when, in reality, it hides delivery charges through hidden food markups applied exclusively to delivery

14

orders.

86.    Defendant's affirmative misrepresentations and material omissions regarding the true nature of Chick-fil-A's Delivery Fee constitutes an unlawful practice under the NJCFA.

87.    Plaintiff and the Class had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose.

88.    As a direct and proximate result of Defendant's deceptive, misleading, and unlawful acts and practices, Plaintiff and the Class suffered an ascertainable loss in that they paid a higher delivery charge than they had bargained for. Accordingly, they have suffered and will continue to suffer actual damages.

89.    Plaintiff and the Class are entitled to relief including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

## THIRD CLAIM FOR RELIEF
### Breach of Contract
### (Asserted on behalf of the New York Class, the New Jersey Class, and the Nationwide Class)

91.    Plaintiffs repeat and re-allege the above allegations as if fully set forth herein.

92.    Plaintiffs and Chick-fil-A have contracted for food delivery services, as embodied in the representations made in the Chick-fil-A app and website.

93.    No contract provision authorizes Chick-fil-A be able to impose hidden delivery charges on its customers in addition to the "delivery charge" represented in its app and on its website.

94.    Chick-fil-A breached the terms of its contract with consumers by charging an additional 25-30% more for food items ordered for "delivery" than the contracted-for "delivery charge."

95.    Plaintiffs and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

96.     Plaintiffs and members of the Classes have sustained damages as a result of Defendant's breach of the contract and breach of the implied covenant of good faith and fair dealing.

<u>FOURTH CLAIM FOR RELIEF</u>
**Unjust Enrichment**
**(Asserted on behalf of the New York Class, the New Jersey Class, and the Nationwide Class)**

97.     Plaintiffs repeat and re-allege the above allegations as if fully set forth herein.

98.     This Count is brought solely in the alternative. Plaintiffs acknowledge that the breach of contract claim cannot be tried along with unjust enrichment.

99.     To the detriment of Plaintiffs and the Classes, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

100.    Defendant unfairly, deceptively, unjustly, and/or unlawfully seized and accepted said benefits which, under the circumstances, would be unjust to allow Defendant to retain.

101.    Plaintiffs and the Classes, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

<u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiffs on behalf of themselves and the Classes seek judgment in an amount to be determined at trial, as follows:

(a)     For an order enjoining Defendant from continuing the unlawful practices set forth above;

(b)     For declaratory and injunctive relief as set forth above;

(c)     For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(d)     For compensatory damages according to proof;

(e)     For punitive damages according to proof;

(f)     For reasonable attorneys' fees and costs of suit;

(g)     For pre-judgment interest; and

(h)        Awarding such other and further relief as this Court deems just, proper and

equitable.

**<u>JURY DEMAND</u>**

Plaintiffs hereby demand a jury trial on all claims so triable.

Dated: September 28, 2021.                     **KALIELGOLD PLLC**


By */s/ Andrew Shamis*
**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.
New York Bar No. 5195185
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: 305-479-2299



**KALIELGOLD PLLC**
Jeffrey D. Kaliel, Esq.
jkaliel@kalielpllc.com
1100 15th St NW, 4th Floor
Washington DC, 20005
*Pro hac vice forthcoming\**



*Attorneys for Plaintiffs and the Proposed Class*