

Shamis & Gentile, P.A.
14 NE 1st Ave, Suite 705 • Miami, FL 33132
Telephone 305-479-2299 • Fax 786-623-0915

May 13, 2022

<u>Via ECF</u>
The Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *Aneisha Pittman, et al. v. Chick-fil-A, Inc.*, No.: 1:21-cv-08041-VM (S.D.N.Y.)

Dear Judge Marrero:

      Defendant's six-page Rule II(B) letter, filed on December 27, 2021, did <u>not</u> seek to file a motion to dismiss Plaintiff Pittman's GBL Section 349 claim. Doc. 17.  Its subsequent letter to the Court on January 14, 2022 also made no mention of seeking dismissal of that claim. Doc. 19. Defendant now changes course and indicates it seeks dismissal of that claim. (Defendant also has not to date sought to dismiss Plaintiff Ukpere's New Jersey Consumer Fraud Act claim.) Because Plaintiff's Pittman's GBL Section 349 claim, like her breach of contract and unjust enrichment claims, are properly pleaded, dismissal is not warranted.

      Plaintiffs allege that Defendant Chick-fil-A ("CFA") made a plain promise in its mobile application and on its website: "Delivery Fee: $3.99." Despite this promise, it charged well more than $3.99 for delivery of the food Plaintiffs ordered. Plaintiffs allege that <u>on delivery orders only</u>, Chick-fil-A furtively marks up food prices by approximately 25-30% and that this mark-up is, in actuality, a delivery charge in excess of the promised $3.99.  In Plaintiff Pittman's example, CFA disclosed a "delivery fee" of $3.99, when in fact the full charge for delivery was $3.99 *plus* about 30% more of the purchase price—a total of about $8-9 for delivery services, not $3.99.  Plaintiff expressly alleges she would not have ordered delivery from CFA if she had known delivery cost $8-$9; it is also axiomatic that many fewer users would knowingly pay an $8 delivery fee than a $4 one. That is precisely why CFA hid part of its delivery fees in inflated menu prices and never told its users it did so—to make its delivery service appear less expensive than it was, distorting consumer choice and gaining an unfair advantage on merchants who refrained from using this trick.

<-><-><->
<-><-><->
<-><-><->
<-><-><->



Based on CFA's promise of "Delivery Fee: $3.99," Plaintiff Pittman reasonably understood that $3.99 was her total marginal cost for having the same CFA food delivered to her home instead of picking it up herself at the store. That the total cost to get Chick-fil-A food from Point A to Point B was $3.99 is the only reasonable meaning of the phrase "Delivery Fee: $3.99."

Indeed, CFA did not say $3.99 was a "partial delivery fee" or that "delivery orders only also have a menu price surcharge." At the very least, CFA omitted this material information. Alternatively, CFA's disclosures constitute actionable omissions because they omitted crucial information, *viz*., that $3.99 was not the *total* cost for delivery, and that CFA added hidden menu price markups on delivery orders only. These omissions are actionable.

This is not the "rare" situation where the question of reasonable consumer deception under GBL Section 349 should be decided on a Rule 12 motion. Courts repeatedly defer applying the reasonable consumer standard at this stage. *See Brady v. Anker Innovations Ltd.*, No. 18-CV-11396 (NSR), 2020 WL 158760, at *9 (S.D.N.Y. Jan. 13, 2020) (noting, it is "a question of fact that is improper for the Court to resolve on a motion to dismiss.").[1] Indeed, it is a "rare situation[ ]" where "granting a motion to dismiss [on a GBL § 349 claim] is appropriate." *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 WL 4367991, at *16 (S.D.N.Y. Aug. 12, 2016) (internal citation omitted). "[A]mple case law exists allowing § 349 claims over allegedly deceptively labeled consumer goods to progress beyond the motion-to-dismiss stage, largely based on the view that the question of what might deceive the reasonable consumer is a question of fact." *Id.* at *14.

Plaintiff has also adequately alleged injury. Contrary to Defendant's argument, Plaintiff alleges not that the $3.99 "delivery fee" misrepresents the cost of the *food*, it misrepresents the cost of the *delivery of that food*. Plaintiff paid more for delivery than represented, and the misrepresentation was material to her purchase. Amended Complaint, 59 ("If she had known the true delivery fee, she would have chosen another method for receiving food from Chick-fil-A or ordered food from another provider.") *See Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir.

---

[1] *See, e.g.*, *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (inquiry "generally a question of fact not suited for resolution at the motion to dismiss stage"); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 241 (S.D.N.Y. 2020) (internal quotations omitted) (same); *Petrosino v. Stearn's Prod., Inc.*, No. 16-CV-7735 (NSR), 2018 WL 1614349, at *7 (S.D.N.Y. Mar. 30, 2018) (internal citations omitted) (reasonable consumer question is "a question of fact better suited for the jury"); *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016) (inquiry "cannot be resolved on a motion to dismiss").



2015) (concluding the plaintiff had suffered an injury because the plaintiff alleged a monetary loss stemming from a deceptive practice).

      In an identical and recent case concerning allegedly misrepresented "delivery fees" on online food orders, the court in *Ross v. Panda Restaurant Group, Inc.*, No. 21STCV03662, (Los Angeles Cnty. Super. Ct., Nov. 3, 2021) rejected the same arguments CFA makes here. Like the instant matter, *Ross* concerns the alleged assessment of food delivery fees in excess of the amount represented to consumers. In *Ross*, Plaintiffs alleged the "Delivery Fee: $2.95" representation by the defendant was false and misleading because defendant assessed delivery fees in excess of that amount. The court undertook a detailed analysis of relevant California case law, and held that "Plaintiffs here challenge a fee [Panda Express] represented as a 'Delivery Fee' and charged customers when they ordered food delivered to them. [Plaintiffs contend] that by charging a 'Delivery Fee,' Panda represented to consumers, or at least implied, that it would cost them $2.95 total to have their food delivered…The Court cannot conclude as a matter of law Panda's alleged practice was not 'unfair' or 'fraudulent.'"

      Defendant does not have a colorable basis to seek dismissal of Plaintiff Pittman's GBL Section 349 claim.

      Sincerely,

      */s/ Andrew J. Shamis*
      Andrew J. Shamis, Esq.