**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/27/22
```

ANEISHA PITTMAN and SUSAN UKPERE,

                    Plaintiffs,

          - against -

CHICK-FIL-A, INC.,

                    Defendant.

**21 Civ. 8041 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiffs Aneisha Pittman ("Pittman") and Susan Ukpere ("Ukpere," collectively with Pittman, "Plaintiffs") bring this putative class action, on behalf of themselves and all others similarly situated, against Chick-fil-A, Inc. ("CFA"), alleging violations of the New York General Business Law ("NYGBL"), violations of the New Jersey Consumer Fraud Act, breach of contract, and unjust enrichment. (See "First Amended Complaint" or "FAC," Dkt. No. 16.) Currently before the Court is CFA's motion to dismiss the FAC under Federal Rules of Civil Procedure 12(b)(2) ("Rule 12(b)(2)") and 12(b)(6) ("Rule 12(b)(6)"), (see "Motion" or "Mot." Dkt. No. 36), and Plaintiffs' request for leave to file a proposed Second Amended Complaint ("SAC"), (see Dkt. 28). For the reasons stated below, the Motion is **GRANTED**, and the request to file the proposed SAC is **DENIED**.

1

## I.    BACKGROUND

A. FACTS[1]

CFA is a Georgia corporation that operates a chain of restaurants throughout the United States. Pittman and Ukpere are citizens of New York and New Jersey, respectively. Plaintiffs allege that they ordered food delivery through CFA's website, and that CFA allegedly promised to provide a flat, low-price delivery fee for online orders. Notably, CFA's checkout screen ("Checkout Screen") displayed separate line items for the following amounts that customers were charged: (1) the subtotal, which reflected the cost of the food items selected, (2) sales tax, (3) delivery fee, (4) tip, and (5) total, which adds the other line items.

### 1. CFA's Delivery Fees

Plaintiffs allege that, in early 2020, CFA displayed on the home screen of its mobile application ("app") or website representations for low-cost delivery fee, typically in the amount of $2.99 or $3.99 ("Delivery Fee"). Plaintiffs allege that CFA's representations about the Delivery Fee were misleading because CFA applied a 25 to 30 percent markup on food items ordered for delivery ("Food Markup"), which was

---

[1]   Except as otherwise noted, the following background is derived from the FAC. The Court takes all facts alleged therein as true and construes the justifiable inferences arising therefrom in the light most favorable to the Plaintiffs, as required under the standard set forth in Rule 12(b)(6) and explained in Section II, below.

reflected on the subtotal at the Checkout Screen. CFA did not, however, apply the Food Markup to food items ordered for pickup. Plaintiffs allege that the Food Markup was not disclosed on CFA's app or website and is actually a hidden delivery fee that is deceptive in light of CFA's purported representation of a flat, low-cost delivery fee. The crux of the FAC's theory is that the Delivery Fee is not actually $2.99 or $3.99 because the functional cost of having food delivered is the Delivery Fee plus the Food Markup.

 2. The Plaintiffs' Purchases

On August 29, 2020, from within New Jersey, Ukpere placed an online delivery order, through CFA's website, from a CFA restaurant located in New Jersey. Prior to Ukpere placing the order, the CFA website stated the Delivery Fee was $2.99. Ukpere alleges that her order contained the Food Markup, and that the food would have cost 25 to 30 percent less if she picked it up from a CFA location. She further alleges that she would not have placed her order if she knew CFA applied the Food Markup. Ukpere placed similar orders on November 4, 2020, and February 17, 2021, from a CFA restaurant in New Jersey. For these later orders, Ukpere similarly alleges that the CFA website stated the Delivery Fee was $2.99, that CFA applied the Food Markup to her orders, and that she would not have placed her order if she knew CFA applied the Food Markup.

Separately, on November 13, 2020, from within New York, Pittman placed a delivery order, through CFA's website, from a CFA restaurant located in New York. According to Pittman, prior to placing the order, the CFA website stated the Delivery Fee was $3.99. Like Ukpere, Pittman alleges that the cost of the food she ordered contained the Food Markup, that the food would have cost 25 to 30 percent less if she picked it up from a CFA location, and that she would not have placed her order if she knew CFA applied the Food Markup.

B. <u>PROCEDURAL HISTORY</u>

Consistent with the Court's Individual Practices, on December 6, 2021, CFA filed a letter regarding an anticipated motion to dismiss the initial complaint. (<u>See</u> Dkt. No. 15.) Soon after, Plaintiffs filed the FAC. Subsequently, on December 27, 2021, CFA filed another letter regarding an anticipated motion to dismiss the FAC. (<u>See</u> Dkt. No. 17.) On January 3, 2022, the Plaintiffs filed a response opposing dismissal. (<u>See</u> Dkt. No. 18) On January 14, 2022, CFA advised the Court that the parties' letter exchange failed to resolve their dispute and requested a conference regarding a proposed motion to dismiss. (<u>See</u> Dkt. No. 19.) Upon the Court's order, CFA filed a supplemental letter addressing any grounds for dismissing Pittman's NYGBL claim, which were not raised in the parties' initial letter exchange. (<u>See</u> Dkt. No. 22.)

Plaintiffs again opposed dismissal, (see Dkt. No. 23), and subsequently requested leave to file the SAC (see Dkt. No. 28; "Proposed SAC," Dkt. No. 28-1). CFA asserts that an amendment would be futile because the proposed SAC fails to cure the deficiencies in the FAC. (See Dkt. Nos. 31, 34.)

The Court denied the request for a conference and directed CFA to file a motion to dismiss based on the arguments raised in the parties' letter exchange. (See Dkt. No. 35.) On June 22, 2022, CFA filed the Motion (see Mot.; "CFA Br.," Dkt. No. 37), Plaintiffs filed their opposition on June 29, 2022, (see "Opp'n," Dkt. No. 39), and CFA filed its reply on July 6, 2022, (see "Reply," Dkt. No. 40).

## II.   LEGAL STANDARD

A. RULE 12(B)(2)

"In considering a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a district court must construe the facts from the pleadings and affidavits in the light most favorable to the plaintiff and, where doubts exist, they are resolved in plaintiff's favor." JFP Touring, LLC v. Polk Theatre, Inc., No. 07 Civ. 3341, 2007 WL 2040585, at *6 (S.D.N.Y. July 9, 2007). A court may exercise two forms of personal jurisdiction: general or specific. See Waldman v. Palestine Liberation Org., 835 F.3d 317, 331 (2d Cir. 2016). General jurisdiction exists when a "corporation's

affiliations with the State are so continuous and systematic as to render it essentially at home in the forum." See Brown v. Lockheed Martin Corp., 814 F.3d 619, 627 (2d Cir. 2016) (quoting Daimler AG v. Bauman, 571 U.S. 117, 139 (2014). In contrast, "[s]pecific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state." Id. at 624.

B. RULE 12(B)(6)

To survive a motion to dismiss, pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint satisfies this standard when it contains sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. See id. However, if the factual allegations sufficiently "raise a right to relief above the speculative level," then a court should not dismiss a complaint for failure to state a claim. Twombly, 550 U.S. at 555.

When resolving a motion to dismiss, the Court's task is to "assess the legal feasibility of the complaint, not . . . the weight of the evidence which might be offered in support thereof." In re Columbia Pipeline, Inc., 405 F. Supp. 3d 494, 505 (S.D.N.Y. 2019) (quoting Eternity Glob. Master Fund ltd. v. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168, 176 (2d Cir. 2004)). At this stage, a court must "accept as true all factual allegations and draw from them all reasonable inferences; but [it is] not required to credit conclusory allegations or legal conclusions couched as factual . . . allegations." Dane v. UnitedHealthcare Ins., 974 F.3d 183, 188 (2d Cir. 2020).

### III.   **DISCUSSION**

CFA argues that Ukpere's claims should be dismissed for lack of personal jurisdiction under Rule 12(b)(2), and alternatively that the Plaintiffs' claims should be dismissed for failure to state a claim under Rule 12(b)(6). (See CFA Br. at 2-7.) CFA further argues that Plaintiffs' nationwide class allegations should be struck because "the FAC fails to allege facts sufficient to identify the state laws that govern, which is necessary for the Court to undertake its rigorous predominance analysis." (Id. at 7.) Lastly, the Plaintiffs request leave to file a proposed SAC to bolster their claims. The Court takes each issue in turn.

A. UKPERE'S NEW JERSEY CLAIMS

The Court must first address whether personal jurisdiction exists over Ukpere's claims because "[a] court facing challenges as to both its jurisdiction over a party and the sufficiency of any claims raised must first address the jurisdictional question." Lugones v. Pete & Gerry's Organic, LLC, 440 F. Supp. 3d 226, 234 (S.D.N.Y. 2020) (quoting Cohen v. Facebook, Inc., 252 F. Supp. 3d 140, 148 (E.D.N.Y. 2017)).

1. General Jurisdiction

The Court lacks general jurisdiction over Ukpere's claims. The standard basis for general jurisdiction over a corporation is the place of incorporation or the principal place of business. See Daimler, 571 U.S. at 137. But CFA is incorporated and headquartered in Georgia. (See FAC ¶ 15.) "[W]hen a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case'" in which general jurisdiction may be asserted. Brown, 814 F.3d at 629. The only allegations in the FAC regarding CFA's contacts with New York are related to Pittman's purchases. But allegations about Pittman's purchases, by themselves, do not establish that CFA's contacts with New York are so systematic and

continuous "as to render [it] essentially at home" in New York. <u>Daimler</u>, 571 U.S. at 139.

    2. <u>Specific Jurisdiction</u>

When determining whether to assert specific jurisdiction over a nonresident defendant the focus is on "the relationship among the defendant, the forum, and the litigation." <u>In re del Valle Ruiz</u>, 939 F.3d 520, 528 (2d Cir. 2019) (quoting <u>Walden v. Fiore</u>, 571 U.S. 277, 283-84 (2014)). To exercise specific jurisdiction, "there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." <u>Id.</u> at 529. (quoting <u>Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cty.</u>, 137 S. Ct. 1773, 1780 (2017)). Courts apply a two-part analysis for determining whether specific jurisdiction comports with Due Process: (1) the court must decide if the defendant "purposefully directed his activities at . . . the forum and the litigation . . . arise[s] out of or relate[s] to those activities," which is known as the minimum contacts analysis; and (2) the court must "determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice," which is known as the reasonableness analysis. <u>Id.</u> (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985)). But when there is no connection between the forum

and the underlying controversy, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." <u>Bristol-Myers</u>, 137 S. Ct. at 1776.

CFA argues that Ukpere has not establish specific jurisdiction because she resides in New Jersey and the contacts related to her purchase occurred in New Jersey. (<u>See</u> CFA Br. at 2-3.) In other words, her claims have no contact with New York. CFA relies on <u>Bristol-Myers</u>, where the Supreme Court held that a group of non-California plaintiffs could not bring a mass tort claim, regarding an allegedly defective drug, in California against a non-California pharmaceutical company. <u>See</u> 137 S. Ct. at 1777-78. The Supreme Court reached this conclusion on the basis that the non-California plaintiffs did not allege that they either obtained the allegedly defective drug in California or were injured in California, and therefore there was an insufficient connection between the forum and the claims. <u>See</u> <u>id.</u> at 1782, 1778.

Although there has been some debate about whether <u>Bristol-Myers</u> applies to class actions, the "overwhelming majority of federal courts have held that <u>Bristol-Myers</u> applies to claims brought by named plaintiffs in class actions." <u>See</u> <u>Lugones</u>, 440 F. Supp. 3d at 235-36 (quoting <u>Sloan v. Gen. Motors LLC</u>, No. 16 Civ. 7244, 2019 WL 6612221,

at *9 (N.D. Cal. Dec. 5, 2019)); see also Suarez v. Cal. Nat. Living, Inc., No. 17 Civ. 9847, 2019 WL 1046662, at *6 (S.D.N.Y. Mar. 5, 2019) ("Specific jurisdiction in a class action arises from the named plaintiff's causes of action, and defendant is indisputably subject to the Court's specific jurisdiction as to plaintiff's claims."). The Court agrees with the majority of courts that Bristol-Myers applies to claims brought by named plaintiffs. Ukpere is a named plaintiff in this case, and therefore fails to establish specific jurisdiction because her claims have no contacts with New York.

Ukpere advances two arguments for why her claims should not be dismissed at this stage. First, dismissal is "premature absent conducting jurisdictional discovery," because "she may have been exposed to CFA's deceptive marketing and may have placed a delivery order in New York at some point during the class period, as it is not unreasonable to assume as much given New York and New Jersey's proximity." (Opp'n at 3.) Failure to make a prima facie case for jurisdiction does not necessarily bar jurisdictional discovery, but "if the plaintiff offers only speculations or hopes . . . that further connections to [the forum] will come to light in discovery, the court should dismiss the complaint without allowing discovery." Eternal Asia Supply Chain Mgmt. (USA) Corp. v.

Chen, No. 12 Civ. 6390, 2013 WL 1775440, at *10 (S.D.N.Y. Apr. 25, 2013) (quotation omitted). Ukpere's argument that she "may have" received CFA's marketing or placed an order in New York is purely speculative. Moreover, Ukpere is in the best possession to obtain and present facts about whether she ordered from a CFA restaurant in New York.

Ukpere also argues that lower courts are split on whether Bristol-Myers applies to class actions. (See Opp'n at 3.) Ukpere relies on Bassaw v. United Indus. Corp., 482 F. Supp. 3d 80, 86 (S.D.N.Y. 2020), where the court deferred, until class certification, the issue of whether it had personal jurisdiction over claims of putative non-New York class members. However, Bassaw is distinguishable because the court found that it was "undisputed" that there was "specific jurisdiction over Defendants with respect to the claim of . . . the sole named Plaintiff." Id. The Bassaw decision therefore comports with the majority of courts that apply Bristol-Myers to named plaintiffs. See Lugones, 440 F. Supp. 3d at 235-36.

For the above reasons, Ukpere's claims are dismissed for lack of personal jurisdiction.

B. <u>PITTMAN'S NEW YORK CLAIMS</u>

CFA next moves to dismiss Pittman's claims for a violation of Section 349 ("Section 349") of the NYGBL, breach of contract, and unjust enrichment. (<u>See</u> CFA Br. at 3-7.)

1. <u>NYGBL Section 349</u>

Pittman alleges that CFA violated Section 349 because it "omits and conceals material facts about the [CFA] delivery service," specifically the Food Markup. (FAC ¶ 8.) Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service," and provides a private cause of action for any person injured under this section." NYGBL § 349(a), (h). There are three elements to a Section 349 claim: "(1) the defendant's challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result." <u>Fink v. Time Warner Cable</u>, 810 F. Supp. 2d 633, 643 (S.D.N.Y. 2011). CFA argues that Pittman has failed to establish the latter two elements of a Section 349 claim.

Pittman argues that she was injured by the Food Markup because she "paid more for delivery than represented, and the misrepresentation was material to her purchase." (Opp'n at 6.) The FAC adds that Pittman "would not have made the

purchase had she known" about the Food Markup, and "[i]f she had known the true delivery fee, she would have chosen another method for receiving food from [CFA] or ordered food from another provider." (FAC ¶¶ 51-52.) CFA contends that the above allegations do not establish a cognizable injury because the FAC does not allege that Pittman received food or delivery service that was worth less than the value she paid. (See CFA Br. at 6-7; Reply at 3.)

To establish an injury, under Section 349, a plaintiff must "allege that, on account of a materially misleading practice, [the plaintiff] purchased a product and did not receive the full value of [the] purchase." Orlander v. Staples, Inc., 802 F.3d 289, 302 (2d Cir. 2015). However, "the deceptive conduct cannot be pled as both act and injury" Braynina v. TJX Companies, Inc., No. 15 Civ. 5897, 2016 WL 5374134, at *9 (S.D.N.Y. Sept. 26, 2016) (quotations omitted), because deception alone "is not . . . an actual injury," Irvine v. Kate Spade & Co., No. 16 Civ. 7300, 2017 WL 4326538, at *3 (S.D.N.Y. Sept. 28, 2017). Several cases illustrate this principle.

In Small v. Lorillard Tobacco Co., the plaintiffs argued that several cigarette companies used deceptive practices to market and sell their cigarettes, and that the plaintiffs would not have purchased the cigarettes absent the deceptive

14

practices. See 720 N.E.2d 892, 895 (1999). The plaintiffs sought "reimbursement of the purchase cost of cigarettes that they claim they would not have bought, but for defendants' fraudulent and deceptive practices." Id. However, the plaintiffs did not allege that addiction to cigarettes was their injury, but instead that "defendants' deception prevented them from making free and informed choices as consumers." Id. at 898. Ultimately, the Small court found that this theory "sets forth deception as both act and injury," and that without "addiction as part of the injury claim, there is no connection between the misrepresentation and any harm from, or failure of, the product." Id. At bottom, the plaintiffs failed to allege that they "did not receive the full value of [the] purchase." Orlander, 802 F.3d at 302.

Another example is Dimond, 2014 WL 3377105, at *1-2, where a plaintiff's Section 349 claim was based on the defendants' practice of adding an 18 percent gratuity on all bills at the defendants' restaurants while also allowing customers to give additional gratuity. The Dimond court found that the "alleged deception — the 18% gratuity — is identical to the pleaded injury," since the plaintiff's allegations "are that he may not have acceded to the 18% gratuity had Defendants provided a different disclosure about that charge." Id. at *9. In sum, where a plaintiff merely "believes

she was deceived into purchasing the product and spending what she did," and there were no allegations "related to the value or the purchased product, or how the product fell short of what it purported to be," a Section 349 claim fails. DaCorta v. AM Retail Grp., Inc., No. 16 Civ. 01748, 2018 WL 557909, at *8 (S.D.N.Y. Jan. 23, 2018).

Pittman's alleged deception is identical to the pleaded injury. Pittman contends that she "would not have made the purchase had she known" about the Food Markup, and "[i]f she had known the true delivery fee, she would have chosen another method for receiving food from [CFA] or ordered food from another provider." (FAC ¶¶ 51-52.) In her Opposition, Pittman clarifies that her injury was that "she paid more for delivery than represented." (Opp'n at 6, 7 ("Plaintiffs were injured by CFA's misleading price representations regarding the cost of delivery.").) In essence, her theory is that she "may not have acceded to the [Food Markup] had [CFA] provided a different disclosure about the charge." Dimond, 2014 WL 3377105, at *9. But this statement amounts to an allegation of deception as both act and injury, which is insufficient to plead a claim under Section 349.

For the reasons stated above, Pittman's NYGBL claim is dismissed for failure to allege a cognizable injury.

2. Breach of Contract[2]

Under New York law, to establish a breach of contract claim, a plaintiff must establish "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011). However, "[a] breach of contract claim will be dismissed . . . as being too vague and indefinite, where the plaintiff fails to allege, in nonconclusory fashion, the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated." Timberg v. Toombs, No. 20 Civ. 6060, 2022 WL 954739, at *10 (E.D.N.Y. Mar. 30, 2022) (quoting Negrete v. Citibank, N.A., 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016)). Therefore, to plead a breach of contract claim, a plaintiff "must provide specific allegations as to an agreement between

---

[2]  Pittman does not bring a stand-alone claim for breach of the covenant of good faith and fair dealing, but she alleged, under her breach of contract claim, that the covenant was breached. (See FAC ¶ 96.) To the extent that Pittman asserts a breach of the covenant, that claim is dismissed as duplicative since it is based on the same factual allegations as the breach of contract claim. See Harris v. Provident Life & Acc. Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002) ("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.").

the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue." Nuevos Aires Shows LLC v. Buhler, No. 19 Civ. 1822, 2020 WL 1903995, at *4 (S.D.N.Y. Apr. 17, 2020) (quoting Valentini v. Citigroup, Inc., 837 F. Supp. 2d 304, 327 (S.D.N.Y. 2011)).

The FAC fails to set forth the specific or essential terms of a contract between Pittman and CFA. Pittman contends that she and CFA "contracted for food delivery services," which was based on the "representations made in the [CFA] app and website" regarding the Delivery Fee. (FAC ¶ 92.) In particular, Pittman alleges that "[b]eginning in early 2020, [CFA] began prominently featuring low-cost delivery promises on its mobile application and on its website," and that "[s]uch representations often are made on the home screen" or the Checkout Screen of CFA's app or website. (Id. ¶¶ 31-32 (alleging CFA "promised a flat 'Delivery Fee,' usually in the amount of $2.99 or $3.99").) But these allegations amount to a "simple characterization of the nature of the promise," which is insufficient to allege a breach of contract. Fink, 810 F. Supp. 2d at 644-45. Without more, the FAC does not present, in a nonconclusory fashion, the specific terms of any purported agreement between Pitmman and CFA. See Timberg, 2022 WL 954739, at *10 (dismissing

18

breach of contract claim where plaintiff alleged that the parties "entered into a contract," and plaintiff presented conclusory statements about what the agreement required); Negrete, 187 F. Supp. 3d at 468 (dismissing breach of contract claim for undisclosed markups on trades when plaintiff "failed to plead the essential terms of the alleged agreement between the parties and which provisions, if any, were breached"), aff'd, 759 F. App'x 42 (2d Cir. 2019).

Similarly, Pittman does not identify the specific provisions of the purported contract that prevented CFA from applying the Food Markup, and that CFA in turn violated by applying the Food Markup. Instead, Pittman alleges only that "[n]o contract provision authorizes" the Food Markup. (FAC ¶ 93.) This allegation is again insufficient to state a claim for breach of contract under New York law.

Pittman cites Cox v. Spirit Airlines, Inc., 786 Fed. App'x 283, 286 (2d Cir. 2019), for the proposition that "price" is an ambiguous term. Cox involved allegations about additional baggage fees charged by a low-cost airline. See Cox v. Spirit Airlines, Inc., 340 F. Supp. 3d 154, 156 (E.D.N.Y. 2018). The Second Circuit presumed the existence of an agreement as to price, destination, and travel dates, and that the plaintiffs alleged that the price barred additional baggage fees. See id. at 286. But as noted, Pittman's vague

and conclusory allegations about "representations" and
"promises" of the Delivery Fee, and what contract terms CFA
violated, are insufficient to allege the existence of a
contract, which Pittman must establish before asserting the
presence of an ambiguous contract term.[3]

### 3. Unjust Enrichment

Pittman's final claim is for unjust enrichment. (See FAC
¶ 97-101.) Unjust enrichment is "available only in unusual
situations when, though the defendant has not breached a
contract nor committed a recognized tort, circumstances
create an equitable obligation running from the defendant to
the plaintiff." Corsello v. Verizon N.Y., Inc., 967 N.E.2d
1177, 1185 (N.Y. 2012). The typical case is one where the
"defendant, though guilty of no wrongdoing, has received
money to which he or she is not entitled." Id. However, an
"unjust enrichment claim is not available where it simply
duplicates, or replaces, a conventional contract or tort
claim." Campbell v. Whole Foods Mkt. Grp., Inc., 516 F. Supp.
3d 370, 394 (S.D.N.Y. 2021) (quoting Izquierdo v. Mondelez
Int'l, Inc., No. 16 Civ. 04697, 2016 WL 6459832, at *10
(S.D.N.Y. Oct. 26, 2016)).

---

[3]  Aside from Cox, Pittman relies on several cases applying California
law, (see Opp'n at 4-5), which are distinguishable since they do not
apply New York law.

Courts in the "Second Circuit have consistently held that unjust enrichment claims are duplicative of [NY]GBL claims." Barton v. Pret A Manger (USA) Ltd., 535 F. Supp. 3d 225, 249 (S.D.N.Y. 2021); NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008) ("Two claims are duplicative of one another if they arise from the same facts . . . and do not allege distinct damages." (quotation and citation omitted omitted)). Where an "unjust enrichment claim is premised on the same factual allegations as those supporting [a plaintiff's] other claims, and [a plaintiff] ha[s] not alleged distinct damages with respect to this claim," then a plaintiff's unjust enrichment claim will be dismissed. Cooper v. Anheuser-Busch, LLC, 553 F. Supp. 3d 83, 115 (S.D.N.Y. 2021) (dismissing unjust enrichment claim as duplicative of Section 349 claim).[4] Furthermore, if "a plaintiff's other claims are defective . . . an unjust enrichment claim cannot remedy the defects." Izquierdo, 2016 WL 6459832, at *10 (quoting Corsello, 967 N.E.2d at 1185). Pittman's unjust enrichment claim is premised on the same

---

[4]   See Dwyer v. Allbirds, Inc., No. 21 Civ. 5238, 2022 WL 1136799, at *11 (S.D.N.Y. Apr. 18, 2022) (dismissing plaintiff's unjust enrichment claim as duplicative, while also dismissing a Section 349 claim); Alce v. Wise Foods, Inc., No. 17 Civ. 2402, 2018 WL 1737750, at *12 (S.D.N.Y. Mar. 27, 2018) (dismissing Section 349 claim and separately finding that plaintiff's unjust enrichment claim was "a mere regurgitation of those made with respect to plaintiffs' . . . claims under the GBL").

factual allegations as her other claims, and she has not alleged any damages separate from those other claims. (See FAC ¶¶ 97-101.) Pittman's unjust enrichment claim is therefore dismissed as duplicative.

C. CLASS ACTION CLAIMS

Since all of the Plaintiffs' claims are dismissed, the Court will not address CFA's arguments regarding the sufficiency of the Plaintiffs' nationwide class action allegations.

D. REQUEST TO FILE THE PROPOSED SAC

The Court turns to Plaintiffs' request, pursuant to Rule 15(a), for leave to file to the proposed SAC. Even though Rule 15(a)(2) provides that a court "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), "it is within the sound discretion of the district court to grant or deny leave to amend." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007). "[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile." Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003). Proposed amendments are futile, and must be denied, "if they would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." Tannerite Sports, LLC v. NBCUniversal News Grp., 864 F.3d 236, 252 (2d Cir. 2017) (quotation omitted).

The Plaintiffs' request identifies four main topics that the proposed SAC addresses: (1) details about CFA's allegedly deceptive marketing and contractual representations; (2) facts about CFA previously offering a flat $4.99 delivery fee, and lowering the delivery fee early in the COVID-19 pandemic; (3) allegations that CFA allegedly designed its app and website to make it difficult for users to identify the Food Markup; and (4) allegations that CFA adopted the Food Markup because it was aware that consumers preferred lower delivery fees. (See Dkt. No. 28.) CFA argues that amendment would be futile because the proposed SAC does not remedy the deficiencies identified above and would therefore also warrant dismissal. (See Dkt. No. 31 at 2-3; Dkt. No. 34.) Preliminarily, Plaintiffs' proposed amendments do not buttress any basis for personal jurisdiction over Ukpere's claims, and therefore Ukpere's claims still warrant dismissal.

As for Pittman's claims, the Court agrees that amendment is futile because the proposed SAC fails to cure the FAC's deficiencies. To bolster the Section 349 claim, the proposed SAC adds that CFA designed its app to ensure that "food prices were only displayed on the app or website after a customer chose delivery or pickup, ensuring delivery customers could not see the price inflation." (See Proposed SAC ¶ 53.) But

Pittman's claim still fails because the proposed SAC continues to allege that Pittman would not have placed her delivery order if she knew of the Food Markup, which is the same theory of deception as both act and injury, which the Court addressed above. (See Proposed SAC ¶¶ 69-70)); Dimond, 2014 WL 3377105, at *9.

As for Pittman's contract claim, the proposed SAC adds that CFA previously offered a "free" delivery fee, in addition to a $2.99 or $3.99 fee. (See Proposed SAC ¶¶ 46-49.) But otherwise, the proposed SAC reiterates the FAC's characterization of "promises" and "representations" about the Delivery Fee, which does not present, in a nonconclusory fashion, the specific terms of any purported agreement with CFA. See Fink, 810 F. Supp. 2d at 644-45; Timberg, 2022 WL 954739, at *10; Negrete, 187 F. Supp. 3d at 468. Relatedly, the proposed SAC fails to identify the specific terms of any purported contract that CFA violated.

Lastly, Pittman's unjust enrichment claim is again premised on the same facts and damages as her other claims, (see Proposed SAC ¶¶ 97-101), which means this claim continues to be duplicative.

## IV.   <u>ORDER</u>

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendant Chick-fil-A, Inc. to dismiss the First Amended Complaint of plaintiffs Aneisha Pittman and Susan Ukpere ("Plaintiffs") (Dkt. Nos. 16) is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' request to file a Second Amended Complaint (Dkt. No. 28) is **DENIED**. The Clerk of Court is directed to terminate all motions and close the case.

**SO ORDERED.**

Dated:     July 27, 2022
           New York, New York

_____
           Victor Marrero
           U.S.D.J.